IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHARLES HINE,<br><br>　　　　　　*Plaintiff*,<br><br>　v.<br><br>PRINCE GEORGE'S COUNTY, MARYLAND,<br><br>　　　　　　*Defendant*. | **Civil Action No.: 8:20-cv-02929-TDC**<br><br>**PLAINTIFF'S BRIEF IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Dated: October 6, 2023

Andrew Rozynski, Esq.
**EISENBERG & BAUM, LLP**
24 Union Square East, PH
New York, NY 10003
(212) 353-8700
arozynski@eandblaw.com
*Attorneys for Plaintiff Charles Hine*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ...................................................................................................................1

ARGUMENT ............................................................................................................................2

I.   Legal Standard ..............................................................................................................2

II.  Defendant failed to accommodate Plaintiff or perform any individualized assessment of his abilities or needs; instead, Defendant relied on a blanket policy of rejected deaf applicants ......................................................................................2

III. Additional testing served no purpose and to require same would frustrate the purpose of anti-discrimination law ...............................................................................14

IV.  Having established liablity, Mr. Hine is entitled to damages .......................................19

     A.   Nominal damages ...............................................................................................19

     B.   Other relief .........................................................................................................20

CONCLUSION .........................................................................................................................26

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................... 4

*Barnes v. Gorman*,
  536 U.S. 181 (2002) ................................................................................................. 10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................................... 4

*Chaitram v. Penn Med.-Princeton Med. Ctr.*,
  No. 21-17583 (MAS) (TJB), 2022 U.S. Dist. LEXIS 203676
  (D.N.J. Nov. 8, 2022) ............................................................................................... 11

*Constantine v. Rectors & Visitors of George Mason Univ.*,
  411 F.3d 474 (4th Cir. 2005) ..................................................................................... 6

*Cowgill v. First Data Techs., Inc.*,
  41 F.4th 370 (4th Cir. 2022) ...................................................................................... 6

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
  142 S. Ct. 1562, 142 S. Ct. 2853 (2022) ............................................................. 11, 12

*Eastman Kodak Co. v. Image Tech'l Servs., Inc.*,
  504 U.S. 451 (1992) ................................................................................................... 4

*EEOC v. BNSF Ry. Co.*,
  902 F.3d 916 (9th Cir. 2018) ..................................................................................... 9

*EEOC v. Fed. Express Corp.*,
  513 F.3d 360, n.5 (4th Cir. 2008) .............................................................................. 9

*Hutchinson v. United Parcel Serv.*,
  883 F. Supp. 379 (N.D. Iowa 1995) .......................................................................... 7

*Liese v. Indian River Cty. Hosp. Dist.*,
  701 F.3d 334 (11th Cir. 2012) ................................................................................... 6

*McCullum v. Orlando Reg'l Healthcare Sys.*,
  768 F.3d 1135 n.8 (11th Cir. 2014) ......................................................................... 10

*Montgomery v. District of Columbia*,
  No. 18-1928 (JDB), 2022 U.S. Dist. LEXIS 92281


(D.D.C. May 23, 2022) ............................................................................................... 6, 11

*Nancy Roe v. Purdue Univ.*,
  No. 4:18-cv-89-JEM (N.D. Ind. Sept. 23, 2022) ............................................................ 11

*PGA v. Martin*,
  532 U.S. 661, 688 (2001) ................................................................................................. 7

*Reyazuddin v. Montgomery* Cty.,
  789 F.3d 407 (4th Cir. 2015) ............................................................................................ 6

*Stillwell v. Kansas City Bd. of Police Comm'rs*,
  872 F. Supp. 682 (W.D. Mo. 1995) ............................................................................. 7, 8

*Uzuegbunam v. Preczewski*,
  537 U.S. 1018 (2002) .................................................................................................... 10

*Viera v. City of N.Y.*,
  No. 15 Civ. 5430 (PGG), 2018 U.S. Dist. LEXIS 169677
  (S.D.N.Y. Sept. 30, 2018) ................................................................................................ 6

*Wade v. Univ. Med. Ctr. of S. Nev.*,
  No. 2:18-cv-01927-RFB-EJY (D. Nev. Feb. 21, 2023) ................................................. 12

**Statutes**

29 U.S.C. § 705(9) ................................................................................................................ 5

29 U.S.C. § 794(a) ................................................................................................................ 5

29 U.S.C. § 794(b) ................................................................................................................ 5

42 U.S.C. § 12101(a)(1) ........................................................................................................ 5

42 U.S.C. § 12102(2) ............................................................................................................ 5

42 U.S.C. §§ 12111(2) .......................................................................................................... 5

42 U.S.C. §§ 12111(5) .......................................................................................................... 5

42 U.S.C. § 12131(1) ............................................................................................................ 6

42 U.S.C. § 12131(2) ............................................................................................................ 5

42 U.S.C. § 18116 ................................................................................................................. 5

**Rules and Regulations**

29 C.F.R. § 1630.2I ............................................................................................................. 7

29 C.F.R. § 1630.2(o)(3) ..................................................................................................... 9

Fed. R. Civ. P. 56(a) ........................................................................................................... 4

Md. Code Ann. ................................................................................................................... 5

Md. Code Regs. 14.03.02.04 .............................................................................................. 9

PGCC § 2-185 (c) ............................................................................................................... 3

PGCC § 2-186 ..................................................................................................................... 5

PGCC § 2-222 ..................................................................................................................... 5

State Gov't § 20-601 ........................................................................................................... 5

**Other Authorities**

Americans with Disabilities Act ................................................................................... 1, 12

Rehabilitation Act of 1974 ............................................................................................ 1, 12

Maryland's Fair Employment Practices Act ................................................................. 1, 12

Nat'l Fire Protection Ass'n
  *NFPA releases Standards Council decision on NFPA 1582 addressing possible legal, funding, and safety risks to fire departments* (Apr. 4, 2023), https://bit.ly/44qN3Vd ............................... 8

# INTRODUCTION

Plaintiff Charles Hine is deaf and applied to be a firefighter with Morningside Volunteer Fire Department, which is overseen by Defendant Prince George's County, Maryland ("the County" or "Defendant"). Mr. Hine has years of firefighting experience, having previously worked at three fire departments where he responded to over 1,000 emergency calls with an unblemished record of service. He is academy trained and comes from a family of proud firefighters.

Nevertheless, the County flatly denied Mr. Hine's application without performing an individualized assessment. Thus, the County did not and could not learn whether Mr. Hine could perform the essential functions of the job based on his experience, nor did the County rule out all possibilities for any reasonable accommodations. Instead, the County instituted an unlawful blanket ban on deaf applicants for active firefighter/EMT positions. Accordingly, Mr. Hine is entitled to relief pursuant to Title I and Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1974, Maryland's Fair Employment Practices Act, and Prince George's County Code ("PGCC").

"Some employers assume incorrectly that workers with hearing impairments" like Mr. Hine "will cause safety hazards, increase employment costs, or have difficulty communicating in fast paced environments." EEOC, Deafness and Hearing Impairments in the Workplace and the Americans with Disabilities Act, https://bit.ly/3vVqUwl. But these workers "should not be denied opportunities because of stereotypical assumptions about hearing loss. . . . In reality, with or without reasonable accommodation, individuals with hearing impairments can be effective and safe workers." *Id*. For all these reasons and others to follow, Mr. Hine sued the County for disability discrimination under local, state, and federal antidiscrimination laws, and the Court should grant summary judgment in his favor.

**FACTUAL BACKGROUND**

Plaintiff Charles Hine has been deaf since birth and American Sign Language ("ASL") is his primary language, but he wears a hearing aid and a cochlear implant to assist his hearing, including to hear people talking. *See* Plaintiff's Statement of Undisputed Material Facts in Support of Motion for Partial Summary Judgment ("SUMF") ¶¶ 1–4. His hearing disability has never limited his vocational abilities – Mr. Hine has a degree in psychology and criminal justice from Gallaudet University, and currently works as a behavior specialist where he works with clients who need mental health treatment and drives to their homes. SUMF ¶¶ 5–7. He was also previously employed as a campus police officer at Gallaudet University and as a financial analyst for PNC Bank. *Id.* ¶ 8.

Mr. Hine's true passion is fighting fires. Indeed, Mr. Hine's father and grandfather were also firefighters, and his father previously worked for the Morningside Fire Department. *Id.* ¶ 20. Mr. Hine's own firefighting career began at just ten years old, when he began working in a junior program at Limerick Fire Department in Royersford, PA. *Id.* ¶ 11. Since then, he has worked at two other fire departments: the Carlisle Fire Department, and the Exeter Township Volunteer Fire Department, both of which are also located in Pennsylvania. *Id.* ¶ 10. Charles Hine excelled in these positions—the Exeter fire department granted him an expectation from the National Fire Protection Association's non-binding hearing requirement after finding that he could fully perform the job without issues, and the captain wrote him a glowing recommendation letter to the Morningside Volunteer Fire Department after three years of service. *Id.* ¶¶ 12–15. Mr. Hine responded to roughly 1,000 to 1,500 emergency calls per year in that position, which involved actively going into burning buildings to fight fires and performing every other essential job function of a firefighter/EMS. *Id.* ¶¶ 16–17. As a firefighter, the only accommodations Mr. Hine

2

needs for his disability are (1) a special mask to keep his cochlear implant cool while fighting fires; (2) the use of a thermal camera; and (3) ASL interpreters so that he can understand and participate in department meetings. *Id.* ¶¶ 9, 18.

Despite his stellar record, the County[1] rejected Mr. Hine's application for an active firefighter/EMT position with the Morningside Volunteer Fire Department in 2018, <u>solely</u> because a medical examination that the County required him to take determined that he had a hearing disability. *Id.* ¶¶ 21–34, 49 & 50. Specifically, the County stated that Mr. Hine did not meet the medical guidelines outlined in the National Fire Protection Association ("NFPA") because of his hearing loss. *Id.* ¶¶ 26–27. Mr. Hine even requested that the Fire Department allow him a short period to observe him performing the essential functions of an operational firefighter/EMT so that they could determine whether he was actually able to do so. *Id.* ¶ 25. The County never responded to this request.

Notably, the NFPA's standards, including the hearing standard under which Mr. Hine was solely rejected, are not legally binding or mandatory for any fire department in the United States; rather, each jurisdiction may decide whether to follow them or not. *Id.* ¶¶ 51–54. The County's Fed. R. Civ. P. 30(b)(6) representative Cynthia Jaye Wills testified that its fire departments are required to evaluate every applicant individually as to whether they can perform the essential functions of the position with or without reasonable accommodation, in order "to avoid discrimination." *Id.* ¶¶ 40 & 42. Regardless, the County's other Rule 30(b)(6) representative Michael White testified he is not aware of any independent assessment performed on Mr. Hine other than the hearing test, nor any other dialogue regarding how or whether Mr. Hine could be

---

[1] The County oversees all of the operations of and hiring by volunteer fire departments within the county, including Morningside Fire Department. SUMF ¶ 22.

accommodated in the position. *Id.* ¶ 48. Ms. Wills even flatly testified that, if the County were to state that Mr. Hine were unable to work at the Fire Department solely because of his hearing loss, that she is "not sure how that would be considered engaging in an interactive process." *Id.* ¶ 47. Fire Chief Tiffany D. Green is not even aware of any process at the fire department where an applicant has an opportunity to demonstrate that they can actually perform the essential functions of the position with or without reasonable accommodation. *Id.* ¶ 54. It bears repeating that Ms. Wills, the County's official representative, testified that that Mr. was rejected solely because they learned of his disability, and she is "not aware of any other reasons for the denial" of Mr. Hine's application for the active firefighter/EMT position. *Id.* ¶¶ 49 & 50.

## ARGUMENT

I. **Legal Standard**

Summary judgment is appropriate when, as here, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In undertaking this analysis, the Court must view the evidence in the light most favorable to Defendant and draw all reasonable inferences in its favor. *Eastman Kodak Co. v. Image Tech'l Servs., Inc.*, 504 U.S. 451, 456 (1992).

Plaintiff, as the moving party, bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After this initial burden is satisfied, Defendant must present "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citation omitted). As shown below, Defendant will be unable to do so.

4

**II.     The County is liable for disability discrimination under state, local and federal law**

In passing the ADA, Congress made clear that no disability should "diminish a person's right to fully participate in all aspects of society." 42 U.S.C. § 12101(a)(1). This goal is shared by Spending Clause legislation like the Rehabilitation Act, which prohibits disability discrimination by federal-funding recipients. 29 U.S.C. § 794(a); 42 U.S.C. § 18116. Title II of the ADA protects individuals from disability discrimination by public entities. Title I of the ADA protects employees from disability discrimination by potential employers, and these same protections are present in state and local laws. *See, e.g.,* PGCC § 2-222 ("No employer in the County shall discharge or refuse to hire any person, or act against any person with respect to compensation or other terms and conditions of employment, or limit, segregate, classify, or assign employees because of discrimination.").

**A.     The County is a covered entity under each of Mr. Hine's claims**

As an initial matter, Mr. Hine is a qualified individual pursuant to each of the federal, state, and local statutes under which he brings his claims. *See* ADA, 42 U.S.C. § 12102(2) & 12131(2); Rehabilitation Act, 29 U.S.C. § 705(9); Md. Code Ann., State Gov't § 20-601 et seq.; PGCC § 2-186 et seq. The County is also subject to each of the federal, state, and local statutes under which Mr. Hine brings his claims and is a covered entity or an employer as defined in each. *See* Title I of the ADA, 42 U.S.C. §§ 12111(2) and 12111(5); Rehabilitation Act, 29 U.S.C. § 794(b); Md. Code Ann., State Gov't § 20-601, et seq. (1984, 2014 Repl. Vol.); PGCC § 2-186, et seq. The County is considered Mr. Hine's prospective employer because he applied for a position with the Morningside Volunteer Fire Department in Prince George's County Maryland, and the County oversees all of the fire department's hiring. SUMF ¶ 22. Moreover, all volunteer firefighters affiliated with the County and Morningside may be entitled to receive benefits including but not

limited to retirement, insurance, survivor, disability/death, medical, tax, family assistance, workers compensation, and other monetary benefits and programs, and some receive housing, tuition, and meal coverage. SUMF ¶ 56. The County is also a public entity as defined under Title II. *See* 42 U.S.C. § 12131(1); *see also* U.S. Dep't of Justice, Settlement Agreement Between the United States of America and Prince George's County, Maryland, And Prince George's County Fire Department, ¶ 1, https://www.justice.gov/crt/settlement-agreement-between-united-states-america-and-prince-georges-county-maryland-and-prince. Last, the County also receives federal funds, subjecting it to the Rehabilitation Act's antidiscrimination provisions. SUMF ¶ 39. The aim of this requirement is "to avoid the use of [f]ederal funds to support discriminatory practices and to protect citizens against discriminatory practices." *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012), *cited by Viera v. City of N.Y.*, No. 15 Civ. 5430 (PGG), 2018 U.S. Dist. LEXIS 169677, at *37–38 (S.D.N.Y. Sept. 30, 2018).

    **B.**    **Mr. Hine's claims may each be proven upon the same set of facts**

While Title I and Title II of the ADA, the Rehabilitation Act, and the analogous state and local statutes under which he brings his claims differ slightly in wording, Mr. Hine may succeed under each by showing that (1) he has a disability under the statutes; (2) the County had notice of his disability; (3) Mr. Hine was otherwise qualified and/or could perform the essential functions of the position; and (4) the County nevertheless refused to reasonably accommodate or hire Plaintiff because of his disability. *See, e.g., Reyazuddin v. Montgomery* Cty., 789 F.3d 407, 414 (4th Cir. 2015) (citation omitted); *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 378 (4th Cir. 2022); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005). It will be undisputed that the first and second elements are met, as Plaintiff Charles Hine is

6

deaf and the County was aware of (and, in fact, relied on) that fact when making the decision not to hire him. *See generally,* SUMF.

As for the third and fourth elements, Plaintiff is a seasoned firefighter and EMT, *see id.* ¶¶ 10–20, and it is not disputed that the County made the decision not to hire Plaintiff solely because a hearing test confirmed Plaintiff's disability, *see id.* ¶¶ 21–34, 49 & 50. For the specific reasons set forth below, Defendant is accordingly liable under federal, state, and local antidiscrimination laws.

> **C.  The County performed no individualized assessment of Mr. Hine's abilities or needs; instead, it relied on a blanket policy of rejecting deaf applicants**

While many disability discrimination cases are based upon a failure to accommodate, these circumstances are even more straightforward: The County's fire department rejected Mr. Hine's application for employment solely because—and immediately after learning—Mr. Hine is deaf. In doing so, the County's failure to conduct an individualized assessment of Mr. Hine violated antidiscrimination laws. *See PGA v. Martin*, 532 U.S. 661, 688 (2001) ("To comply with this command [of the ADA], an individualized inquiry must be made").

Indeed, courts have repeatedly found that a covered entity's blanket policy excluding people with disabilities without any individualized assessment is a per se violation of the ADA. *See, e.g., Hutchinson v. United Parcel Serv.*, 883 F. Supp. 379, 396-97 (N.D. Iowa 1995) (noting that a blanket exclusion of people with disabilities without individual assessment is a per se violation of the ADA) (collecting cases); *Stillwell v. Kansas City Bd. of Police Comm'rs*, 872 F. Supp. 682, 686-88 (W.D. Mo. 1995) (holding that a blanket exclusion of one-handed applicants from licensing as police officers violated the ADA); *see also* 29 C.F.R. § 1630.2I ("The determination that an individual poses a 'direct threat' shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job.").

In fact, the National Fire Protection Association recently addressed how certain rules on medical standards could violate federal law. *See* Nat'l Fire Protection Ass'n, *NFPA releases Standards Council decision on NFPA 1582 addressing possible legal, funding, and safety risks to fire departments* (Apr. 4, 2023), https://bit.ly/44qN3Vd.

Here, the County has in effect a blanket policy to deny employment to anyone who fails its hearing test. *See, e.g.*, SUMF ¶¶ 27, 34, 47–52; *see also id.* ¶ 54 (Fire Chief Green's testimony that if "someone has a medical condition, which is also a disability[,] that disqualifies them under NFPA," and therefore the position). In other words, the County denied Mr. Hine's job application based only on his hearing test without any individualized assessment of his skills as a volunteer firefighter/EMT. This "blanket exclusion of all [deaf] applicants because of an unfounded fear that they are dangerous . . . clearly runs afoul of the individualized assessment required by the ADA. It is essential that disabled [] applicants be given consideration on a case-by-case basis to accurately determine what risks, if any, they pose to themselves or the public." *Stillwell*, 872 F. Supp. at 687. To be clear, Mr. Hine "is not asking [the County] to lower its safety standards." *Id*. at 688. Rather, Mr. Hine challenges the legality of [the County's] rule that prohibits him from" becoming a volunteer firefighter/EMT "solely because he [cannot hear]. He simply requests the opportunity to demonstrate that, despite his disability, he is capable of meeting those requirements or can do so with reasonable accommodations. The ADA guarantees him that equal opportunity." *Id*. Thus, the Court should find that the County's "blanket disqualification" of all deaf applicants from being a volunteer firefighter/EMT without any individualized assessment "violates the ADA." *Id.*

        **D.**    **The County provided no opportunity to determine whether Mr. Hine can perform the essential functions of an active firefighter/EMT, with *or* without a reasonable accommodation**

8

It is important to note that a potential "employee does not have to mention the ADA or use the phrase 'reasonable accommodation.' Adequate notice simply informs the employer of both the disability and the employee's need for the accommodations for that disability." *EEOC v. Fed. Express Corp.*, 513 F.3d 360, 369 n.5 (4th Cir. 2008). Mr. Hine had no opportunity to request an accommodation anyway, because he was disqualified solely based upon the results of his hearing exam rather than an inability to *perform any* specific function of a volunteer firefighter/EMS position. This inability was not due to any fault of Mr. Hine's – he requested multiple times that the fire department allow him to "shadow" other firefighters or otherwise demonstrate that he is capable of doing the job he applied for. SUMF ¶ 35.

The County shut down Mr. Hine's application without any evaluation of whether he could perform the essential job functions of a volunteer firefighter/EMT, a position that Mr. Hine had already made a career of. Had the County performed any individual assessment of his abilities to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations," 29 C.F.R. § 1630.2(o)(3); *see also* Md. Code Regs. 14.03.02.04 (analogous requirement under state law); PGCC § 2-185 (c) (analogous requirement under local law), it would know that Mr. Hine can perform the position in question having worked successfully as an active firefighter/EMT for years at various fire departments. SUMF ¶¶ 10–20.

**E.     The County subjected Mr. Hine to unequal and disparate treatment.**

Last, the County is also liable for subjecting Mr. Hine to unequal or disparate treatment when it required him to submit additional audiometry exam results at his own expense. *See* SUMF ¶¶ 28–33. Employers cannot impose an additional financial burden on people with disabilities by asking them to bear the cost of additional medical testing. *EEOC v. BNSF Ry. Co.*, 902 F.3d 916,

9

926–27 (9th Cir. 2018) (holding that employers cannot require an applicant with disabilities to pay for follow-up testing). Accordingly, the County cannot avail itself of any defense that Mr. Hine failed to submit additional audiometry test results, especially where he had already provided results from 2010 and a letter from the Amin Medical Center advising that Mr. Hine has permanent congenital deafness and that his hearing had not changed since then. SUMF ¶¶ 28–30, 32 & 33.

## V.   Having established liability, Mr. Hine is entitled to damages

### A.   Nominal damages

Upon a finding of liability, Mr. Hine is automatically entitled to damages. *See, e.g.*, *McCullum v. Orlando Reg'l Healthcare Sys.*, 768 F.3d 1135, 1149 n.8 (11th Cir. 2014) ("[D]iscriminatory intent is [only] required" if a plaintiff is "seeking compensatory damages."). Indeed, nominal damages are available under Supreme Court precedent. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) (explaining that "every violation of a right imports damage" and "nominal damages can redress [such an] injury even if [a plaintiff] cannot or chooses not to quantify that harm in economic terms") (cleaned up). Although *Uzuegbunaum* involved a constitutional right, the Supreme Court left no room for distinctions when it reaffirmed that "*every* violation of a right imports damage." *Id.* (cleaned up).

What is more, nominal damages are available under Title II and the Rehabilitation Act— and by extension, state laws—pursuant to longstanding contract-law principles. The Supreme Court has "regularly applied the contract-law analogy" in "determining the *scope* of damages remedies" available under Spending Clause statutes. *Barnes v. Gorman*, 536 U.S. 181, 186-87 (2002) (emphasis in original). As a result, "[a] funding recipient is generally on notice that it is subject not only to those remedies explicitly provided in the relevant legislation, but also to those remedies traditionally available in suits for breach of contract." *Id.* at 187. According to the Second

10

Restatement, "a breach of contract by a party against whom it is enforceable always gives rise to a claim for damages." Restatement (Second) of Contracts § 346 cmt. b (1981). Even in cases where "loss is caused but recovery for that loss is precluded because [of unforeseeability and lack of fair notice, among] other limitations . . . *the injured party will nevertheless get judgment for nominal damages*." *Id.* (emphasis added and internal citations omitted). Thus, applying this contract-law principle, nominal damages should be available to a plaintiff who proves a legal violation of Spending Clause legislation. Accordingly, Mr. Hine is automatically entitled to nominal damages upon proof of liability.

    **B.**    **Other relief**

As for compensatory damages, a factfinder may consider Mr. Hine's expectation interest. For federal antidiscrimination law—but not state law, the Supreme Court stated that "emotional distress damages are not recoverable" under the Rehabilitation Act (and by extension, Title II of the ADA). *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1576, *reh'g denied*, 142 S. Ct. 2853 (2022). However, "*Cummings* does not foreclose compensatory damages under an expectation-interest theory." *See, e.g.*, *Chaitram v. Penn Med.-Princeton Med. Ctr.*, No. 21-17583 (MAS) (TJB), 2022 U.S. Dist. LEXIS 203676, at *5 (D.N.J. Nov. 8, 2022); *Montgomery v. District of Columbia*, No. 18-1928 (JDB), 2022 U.S. Dist. LEXIS 92281, at *74 & 76–77 (D.D.C. May 23, 2022) (discussing how expectation-interest damages "would be entirely appropriate in a traditional contract case" and thus permissible in cases where the defendant "agreed to receive federal funds in exchange for promising to refrain from discriminating against qualified individuals with disabilities"); Final Jury Instrs., *Nancy Roe v. Purdue Univ.*, No. 4:18-cv-89-JEM (N.D. Ind. Sept. 23, 2022), ECF No. 140 (Instr. No. 24) (instructing jury to "determine the amount of money that will fairly compensate [plaintiff] for any injury that you find she sustained as a direct

11

result of being denied equal access to educational opportunities"); Order, *Wade v. Univ. Med. Ctr. of S. Nev.*, No. 2:18-cv-01927-RFB-EJY (D. Nev. Feb. 21, 2023), ECF No. 56 at 5–6 ("The Court agrees with Plaintiff that consequential damages are not foreclosed by *Cummings*. . . . Plaintiff seeks 'damages to the extent allowed by law' due to the violations of [federal law]—not merely emotional distress damages. Plaintiff is therefore entitled to seek consequential damages.").

In addition, the County, given its conduct, should also be liable for punitive damages. Along with monetary damages, Mr. Hine should receive injunctive and declaratory relief, including revised training and policy changes, under local, state, and federal laws.

## CONCLUSION

For the reasons provided, Plaintiff respectfully requests that the Court find Defendant liable under Title I and Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1974, Maryland's Fair Employment Practices Act, and Prince George's County Code. Upon such a finding, Plaintiff is automatically entitled to nominal damages, and a factfinder should assess his entitlement to compensatory damages and injunctive and declaratory relief.

Dated: October 6, 2023                                  Respectfully submitted,

                                                        /s/ Andrew Rozynski
                                                        Andrew Rozynski, Esq.
                                                        **EISENBERG & BAUM, LLP**
                                                        24 Union Square East, PH
                                                        New York, NY 10003
                                                        (212) 353-8700
                                                        arozynski@eandblaw.com
                                                        *Attorneys for Plaintiff Charles Hine*

## CERTIFICATE OF SERVICE

On October 6, 2023, I caused this document to be served upon all attorneys of record, by filing the same with the CM/ECF system.

Dated: October 6, 2023

Respectfully submitted,

Andrew Rozynski, Esq.
**EISENBERG & BAUM, LLP**
24 Union Square East, PH
New York, NY 10003
Tel: (212) 353-8700
Fax: (917) 591-2875
arozynski@eandblaw.com
*Attorneys for Plaintiff Charles Hine*