IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHARLES HINE,<br><br>                       *Plaintiff*,<br><br>v.<br><br>PRINCE GEORGE'S COUNTY, MARYLAND, | **Civil Action No.: 8:20-cv-02929-TDC**<br><br>**PLAINTIFF'S REPLY TO DEFENDANT'S 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS** |

1.  Nothing in the County Code states that the County has any authority to determine who a volunteer company may "hire" or "fire" as a member, as they are private non-profit corporations with discretion over their own membership. [McClelland Aff., 1E]

**Responses:** Disputed. Prince George County Fire Chief Tiffany Green extensively testified that if a Volunteer Fire Department Chief hired a deaf firefighter as an operational firefighter against PGC operational standards, both the Chief and the operational member would be fired by her. She has the sole ultimate authority to approve the operational members and chiefs of the volunteer fire departments. Chief Tiffany Green Dep – Exhibit M.  Pg. 41: Ln. 25 – Pg.44: Ln.1. Mr. Hine applied to be a volunteer, and "[v]olunteers are only under the operational authority of the County." McClelland Aff. ¶ 6; *id.* ¶ 5 ("All operational officers must meet certain criteria laid out in the General Orders and Prince George's County Code."). In addition, the County takes responsibility for the relevant pre-employment medical examination and background investigation. *Id.* ¶ 15. The County is also charged with paying for the testing and evaluation of volunteer firefighters; therefore, it was the County that refused to pay for the additional testing requested by Mr. Hine—an issue central to the claim. *Id.* ¶¶ 10, 14.

Moreover, all the communications in regard to medical testing and Mr. Hine's denial were from Prince George's County, counsel for Prince George's County, or Prince George's County Office of Law. The Concentra nurse that evaluated Mr. Hine identified herself as a Prince George's County nurse in her email signature block. See Letters from Prince George's County Volunteer Fire/EMS to Plaintiff dated March 8, 2018 and September 5, 2018 [PLA_000001-PLA_000003].

Indeed, although the County identifies isolated citations from the McClelland Affidavit, a complete reading of the affidavit and Chief Green's testinomy makes clear that the County exerts control over the volunteer departments, especially when dealing with operational volunteers, which is the position that Mr. Hine applied for. For example, the County is the central source of funding, the body that sets the criteria for officers, and the body that promulgated all the relevant regulations and requirements. See McClelland Affidavit and Green Deposition in its entirety.

2. Volunteer fire company has the authority and discretion as to whether or not to accept an applicant; only then can the applicant apply to become operational with Prince George's County. Ex. 1.

**Disputed,** as laid out above, the county exerts control over the volunteer departments such that they are not independent actors. Moreover, this fact is not relevant because Mr. Hine applied to become operational and would not accept a non-operational position. This fact regarding refusal to accept a non-operational position is included by Defendant in the factual background of their memorandum of law in support of summary judgement at p.2.

3. If the volunteer fire company has live-in accommodations (i.e. bunk rooms), the volunteer fire corporations have the authority to determine whether members will be permitted to reside there and the requirements vary from volunteer station to volunteer station. Ex. 2, McClelland Dep., 18:9-23.

**Undisputed** but not relevant. The only conceivable relevance that this fact could have is in determining whether the position applied for constitutes employment as contemplated by state and federal anti-discrimination statutes. However, that analysis is not affected by whether the volunteer fire department has authority to determine whether members will be permitted to reside there as opposed to the county. This fact does not have any bearing on whether or not the county violated state and federal antidiscrimination law.

4. Reimbursement for training offered through the state and the volunteer association is available to all volunteers on a limited basis and its competitive; thus, it is not guaranteed to any volunteer firefighter. Ex. 2, 19:3-6.

**Undisputed** but not relevant. Mr. Hine sought an operational position and already had the needed training. (See Hine Dep Tr. 46:10-16)

5. Maryland provides an income tax deduction for volunteer firefighters that is earned based on years of volunteer services and activities. Ex. 2, 19:20-23.

**Undisputed** to the extent that Defendant is not contending that is the only compensation offered to operational volunteers.

6. The LOSAP or retirement benefits offered to volunteer firefighters is based on 25 years of service and the minimum age of 55 and is not based on whether the firefighter is operational or nonoperational. Ex. 2, 20:11-21:4.

**Undisputed.**

7. The standards adopted by the NFPA are based on the least restrictive standards established by the Department of Transportation Federal Motor Carrier Act. Ex. 3, Samo Dep., 12:23-13:1

**Undisputed** that Dr. Samo testified to this effect. However, disputed as this fact is misleading because it fails to recognize that the FMCSA has waiver program for hearing standards since 2008 and is therefore is no longer a bar to obtain a CDL. An individual may apply for a FMCSA hearing waiver standard. 49 CFR 391.41(b)(8) or 391.41(b)(11).

8. The medical standards as they relate to hearing were authored by a committee comprised of physicians, industrial hygienists and firefighters. Ex. 3, 16:22-25.

**Undisputed,** they are comprised of this group and further determined in the NFPA in appendix A.6.5 that "Currently, no hearing tests will allow the fire department physician to accurately predict whether the fire fighter will adequately be able to safely perform essential job duties.", a core issue of the discrimination in this case. Plaintiff is alleging that the standard enforced (regardless of who created it) violates state and federal antidiscrimination statutes.

9. Dr. Samo, who started working with NFPA in 1996 and has hearing loss works on the technical committee that established the hearing standards for NFPA. Ex. 3, 15:11-19.

**Undisputed** but not relevant. The fact that Dr. Samo has some degree of hearing loss is not a credential that effects the veracity or accuracy of his testimony. The fact that he worked on creating the NFPA is not relevant because the county was not under any legal obligation to follow the NFPA in all aspects and had the ability to make exceptions as many other stations in Maryland in fact did. (See Hine Dep Tr. 11, 12: 16-2)

10. An individualized assessment is performed before a candidate is categorized. Ex.3, 26:3-4.

**Disputed**, the process was not individualized. The county denied Mr. Hine solely based on hearing levels. The same medical assessment is performed on all applicants seeking operational status; therefore, the assessment is not individualized. In the NFPA in appendix A.6.5 it states

"Currently, no hearing tests will allow the fire department physician to accurately predict whether the fire fighter will adequately be able to safely perform essential job duties.", a core issue of the discrimination in this case.  Plaintiff asked for the opportunity to show the fire department he was capable of performing the essential job duties but was not permitted to do so. (See Hine Depo Tr. 46:21-47:2) Lastly, there was no opportunity for Plaintiff to explain how he could perform the job duties or whether an accommodation was needed (See Hine Depo Tr. 47:4-7).

11. Firefighters are required to use all of their senses that are available to them when entering into a burning structure. The structures are usually full of smoke, which limits visibility and sight. Ex. 3, 34:3-7.

**Disputed**, in addition to Mr. Hine, there are other deaf firefighters that have performed the position in exemplary manor therefore use of all your senses is not mandatory requirement for all firefighters. (See Hine Dep Tr. 25:12-26:11).

12. The sense of smell and taste are eliminated because the firefighter is breathing through a mask. Ex. 3, 34:7-10.

**Undisputed** but immaterial to whether or not the county violated state and federal antidiscrimination law.

13. The sense of touch is limited due to be encapsulated in fire protective clothing and gear. Ex. 3, 34: 9-11.

**Undisputed** but not relevant to whether or not the county violated state and federal antidiscrimination law.

14. Hearing is critical to locating victims hiding from the fire, strapped in other rooms or floors and communicating with fellow firefighters and first responders.  Ex. 3, 34:13-35:1.

**Disputed.** in addition to Mr. Hine, there are other deaf firefighters that have performed the position in exemplary manor therefore the ability to hear is not critical (having a decisive or crucial importance in the success or failure of something). (See Hine Dep Tr. 25:12-26:11).

15. The fire ground is a very noisy place and hearing in a noisy place is a huge problem if you have a hearing impairment. Ex. 3, 37:23-38:1.

**Disputed** because it implies that hearing difficulty at a noisy fire seen is contingent upon hearing impairment and it is not.

16. There is a question of whether the hearing aid will survive and/or continue to function in the fire ground and there has not been any research on the issue. Ex. 3, 38:16-20.

**Disputed**. Mr. Hine does not dispute that Dr. Samo testified to that effect and that Dr. Samo is not aware of any such studies. **Disputed** that there is a question of whether a hearing aid can survive in a fire ground as Mr. Hine has used one in a fire ground in many instances with a mask to keep it from heating up. (See Hine Dep Tr. 81:18-82:18) Therefore, the hearing aid can survive in a fire ground.

17. As a person suffering from hearing loss, Dr. Samo personally experienced his hearing aid stop functioning while being out in the summer walking a fair ground, and they say they are not waterproof but water resistant. Ex. 3, 38:24-39:9.

**Disputed.** Water proof hearing aids are rare but exist. Additionally, Mr. Hine objects because what a hearing aid manufacturer states is hearsay. Lastly, Dr, Samo's anecdotal experiences have no bearing on whether or not the county violated state and federal antidiscrimination law therefore those assertions are not relevant.

18. Career Firefighter has to go through a six-month academy. They are required to take Fire 1, Fire 2, HAZMAT, rescue tech, infectious control, ICS 800. It's numerous. I could go down the

list. And that's the minimum and failure to pass any of those will result in - unemployment or termination.  Ex. 4, Green Depo. 18:7-19.

**Undisputed**  that this was testified to and undisputed that Mr. Hine wasn't given an opportunity to prove himself that he could pass such courses.  Mr. Hine was an operational volunteer in past firefighting positions. (See Hine Dep Tr. 11, 12: 16-2 and see 17: 13-14) Furthermore, it is not relevant to whether or not the county violated state and federal antidiscrimination because the position applied for was an operational volunteer fire fighter and not a career fire fighter.

Dated: November 22,  2023            Respectfully submitted,

_____
Andrew Rozynski, Esq.
**EISENBERG & BAUM, LLP**
24 Union Square East,
PH New York, NY
10003 Tel: (212) 353-8700
Fax: (917) 591-2875
arozynski@eandblaw.com
*Attorneys for Plaintiff Charles Hine*

## CERTIFICATE OF SERVICE

On November 22, 2023, I caused this document to be served upon all attorneys of record, by filing the same with the CM/ECF system.

Dated: November 22, 2023								Respectfully submitted,

												Andrew Rozynski, Esq.
												**EISENBERG & BAUM, LLP**
												24 Union Square East,
												PH New York, NY
												10003 Tel: (212) 353-8700
												Fax: (917) 591-2875
												arozynski@eandblaw.com
												*Attorneys for Plaintiff Charles Hine*